**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 12-cv-03143–RM-CBS

RICHARD L. GOCHA

      Plaintiff,

v.

NATIONAL RAILROAD PASSENGER CORPORATION (d/b/a AMTRAK),

      Defendant.

---

**ORDER ADOPTING MAGISTRATE'S RECOMMENDATIONS (ECF No. 47) AND
OVERRULING PLAINTIFF'S OBJECTIONS (ECF No. 51)**

---

This matter is before the Court on United States Magistrate Judge Craig B. Shaffer's Recommendation ("the Recommendation") (ECF No. 47) that the Court grant Defendant's Motion to Dismiss Counts I and II of Plaintiff's Complaint (ECF No. 12) and that the Court deny Plaintiff's Partial Motion for Judgment on the Pleadings or in the Alternative, Motion for Summary Judgment. (ECF No. 16). Plaintiff has timely objected to the Recommendation. (ECF No. 51). For the reasons below, Plaintiff's objections are OVERRULED, and the Recommendation is ADOPTED.

**I.    LEGAL STANDARDS**

    **A.    Standards for Dismissal.**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS,* 23 F.3d 1576, 1580 (10th Cir.1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler,* 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso,* 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this court has jurisdiction to hear his claims.

  **B.**  **Judgment on the Pleadings.**

A motion for judgment on the pleadings "should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006), abrogated on other grounds by *Magnus, Inc. v. Diamond State Ins. Co.*,

545 F.App'x 750, 753 (10th Cir. 2013); *see also* 5A Charles A.Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2004). The Court accepts all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Park Univ. Enters.*, 442 F.3d at 1244.

### C. Reviewing Previously Arbitrated Railway Labor Act Claims.

Section 153 First (q) of the Railway Labor Act ("RLA") allows for limited judicial review of a labor board's ruling. The statute provides:

> On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

45 U.S.C. § 153 First (q). "Only upon one or more of these bases may a court set aside an order" of a labor board. *Union Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978). The scope of judicial review of a labor board's decision "is among the narrowest known to law." *Robinson v. Union Pacific Railroad*, 245 F.3d 1188, 1192 (10th Cir. 2001) (internal quotation marks and citation omitted). *See also LB & B Assoc., Inc. v. Int'l Bhd. of Elec. Workers*, 461 F.3d 1195, 1197 (10th Cir. 2006) (arbitrator's discretion entitled to "profound deference") (internal quotation marks and citation omitted).

"The federal courts do not sit as super arbitration tribunals in suits brought to enforce awards of [the Public Law Board ("PLB")]. They may not substitute their judgments for those of the Board's divisions. They need not inquire whether substantial evidence supports the Board's awards." *Diamond v. Terminal Ry. Ala. State Docks*, 421 F.2d 228, 233 (5th Cir. 1970); *cf. Loveless v. E. Air Lines, Inc.*, 681 F.2d 1272, 1276

(11th Cir. 1982) ("It is thus firmly established that courts will not review the substance of a labor arbitration award for ordinary error and that courts will not vacate an award because a judge might have reached a different result."). It is only when the arbitrator strays from interpretation and application of the agreement and effectively "dispense[s] his own brand of industrial justice" that his decision may be unenforceable. *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

The test "is not whether the reviewing court agrees with the Board's interpretation of the bargaining contract, but whether the remedy fashioned by the Board is rationally explainable as a logical means of furthering the aims of the contract." *Bhd. of Ry., Airline & Steamship Clerks v. Kansas City Terminal Ry.*, 587 F.2d 903, 906–07 (8th Cir. 1978) (internal quotation marks and citation omitted). Even "improvident…silly factfinding" does not provide a basis for a reviewing court to refuse to enforce an arbitration award. *United Paperworkers Int'l Union, AFL-CIO v. Misco*, 484 U.S. 29, 39 (1987).

**D.     Review of the Magistrate Judge's Report and Recommendation.**

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district court judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

**II.     RELEVANT FACTS AND PROCEDURAL HISTORY**

The dispute between the parties in this matter has little to do with the facts. The dispute centers on the actions of a Special Board of Adjustment which heard the facts and issued a decision pursuant to a collective bargaining agreement. No party has objected to the recitation of facts set forth in the Recommendation in that section captioned "Statement of the Case." That recitation is adopted by this Court and largely replicated below.

During the period relevant to his suit, Richard L. Gocha ("Plaintiff") was a Colorado employee of Defendant, National Railroad Passenger Corporation, d/b/a Amtrak ("Amtrak"). (ECF No. 1 at ¶ 13). In May 2009, he served as Lead Service Attendant ("LSA") with Amtrak's Los Angeles On Board Services Crew Base. (*Id.* at ¶ 20). As the LSA, Plaintiff was responsible for accounting for an inventory list that tracks the sale of food and beverages that coach passengers buy aboard the train. (*Id.* at ¶¶ 23–24). Per Amtrak's rules, the "LSA and the Chef are responsible for ensuring that all paperwork and reports are complete and accurate before submitting to the crew base in the proper report envelope." (*Id.* at ¶ 48). Plaintiff was accountable to Amtrak for the difference between the value of the stock at the beginning and the end of the trip. (*Id.* at ¶ 22–¶ 24). LSAs and other crew members account for sleeping car passengers' meals on an accounting form by noting a credit for the meal. (*Id.* at ¶ 25). Food and beverage items on a sleeping car passenger's meal check reduced the amount of cash an LSA remitted to Amtrak at the end of a trip. (*Id.*). Because LSAs were not "charged" for food given to sleeping car passengers, an LSA falsely reporting selling food to a sleeping car passenger could retain the charged item's monetary value.

5

To guard against this potential for employee theft, Amtrak hires revenue protection consultants to ride its trains posing as sleeping car passengers and report their observations. (*See* ECF No. 1 at ¶ 29). On May 7, 2009, Kaye Stewart, a revenue protection consultant, posed as a sleeping car passenger on an Amtrak route from Los Angeles to Chicago. (*Id.* at ¶ 28). Her job was to observe how the crew handled meal checks and dining room procedures. (*Id.* at ¶ 29). On May 8, 2009, Stewart alleged that the claim check for her lunch order included a slice of cheesecake which she did not order. Stewart also alleged that she ordered a baked potato, vegetables, and a glass of milk for dinner, but her check showed a steak that she did not order. (*Id.* at ¶ 31). Stewart alleges that Plaintiff took her dinner order. (*Id.* at ¶ 31, ¶ 32). On or about May 15, 2009, Stewart turned in her report on the May 8, 2009, trip, claiming that she did not order the referenced cheesecake or steak. (*Id.* at ¶ 38). Plaintiff was then investigated for the May 8th incident, and found culpable in connection with the submission of altered paperwork which reduced the amount of cash remitted to Amtrak at the end of the trip. (ECF No. 1 at ¶ 42). Amtrak subsequently terminated his employment on March 26, 2010. (*Id.* at ¶ 50).

A collective bargaining agreement ("CBA") governs many of the terms of Plaintiff's employment. (ECF No. 1-2). "Section 3 of the RLA establishes a framework for resolving disputes between an employee and carrier over the interpretation of such agreements; first through the grievance procedure in the collective bargaining agreement, and then through mandatory arbitration before the National Railroad Adjustment Board or a special board of adjustment established by the railroad carrier and the union." *Reed v. Norfolk Southern Ry. Co.*, No. 12 cv 873, 2013 WL 1791694, at *2 (N.D. Ill. Apr. 26, 2013) (citing 45 U.S.C. § 153 First (i), Second, *Union Pac. R.R. v. Bhd. Of Locomotive Eng'rs & Trainmen Gen. Comm. of*

*Adjustment, Cent. Region*, 558 U.S. 67, 72 (2009)). Plaintiff appealed his termination before Public Law Board ("PLB") No. 6896—a Special Board of Adjustment—in accordance with the RLA. (ECF No. 1 at ¶ 52). *See also Watts v. Union Pac. R. Co.*, 796 F.2d 1240, 1243 (10th Cir. 1986) ("Reinstatement actions are within the exclusive jurisdiction of the National Railroad Board or special boards of adjustment such as the Public Law Board in this case.").

The PLB found that "other crew members could have made the marks on the receipts and meal checks that were suspicious." (ECF No. 1-1 at 2). Accordingly, the Board ruled that Plaintiff had been found guilty "on less than solid evidence." (*Id.*). The PLB then found that Plaintiff should not have been dismissed and reinstated him, but did so without granting him backpay or benefits. (ECF No. 1-1 at 3). Not satisfied with this result, Plaintiff initiated the instant lawsuit on December 3, 2012, alleging jurisdiction based on 28 U.S.C. § 1331. (ECF No. 1 at 3 ¶ 11). He proceeds "pursuant to Section 3 First of the Railway Labor Act ("RLA"), which grants aggrieved parties the right to seek to set aside and remand, in whole or in part, a decision of an arbitral system board (here, the PLB) for 'failure to conform, or confine itself, to matters within the scope of the [board's] jurisdiction.'" (*See* ECF No. 1 at 1 (citing 45 U.S.C. § 152 First (q)).

Plaintiff originally set forth three claims in his lawsuit: (1) that the PLB exceeded its jurisdiction by denying him backpay and benefits; (2) that the PLB was without jurisdiction to adjudicate the merits of the charges against him because they were not timely submitted; and (3) that Amtrak discriminated against him because of his race, violating 42 U.S.C. § 1981(a). (ECF No. 1 at ¶ 61–¶ 87). Since Plaintiff filed his Complaint, the parties have stipulated that claim three—Plaintiff's racial discrimination claim—be dismissed, and the Court has so ordered. (ECF

Nos. 52 & 53). On January 14, 2013, Defendant filed a Motion to Dismiss Counts I and II of Plaintiff's Complaint. (ECF No. 12). On January 22, 2013, Plaintiff responded by written response and by filing his Partial Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment. On July 1, 2013, Magistrate Judge Craig Shaffer issued a recommendation that Defendant's Motion to Dismiss Counts I and II be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 47). And he recommended that Plaintiff's Partial Motion for Judgment on the Pleadings be denied.

### III. ANALYSIS

#### A. The PLB did not exceed the scope of its jurisdiction by failing to award Plaintiff backpay.

Plaintiff objects to Judge Shaffer's determination that the PLB was permitted to reinstate him without awarding backpay. Judge Shaffer found that the PLB had the authority to exercise its discretion in formulating a remedy for Plaintiff, which was reinstatement without backpay. Exercising this discretion, the PLB's award drew its essence from the collective bargaining agreement, and thus did not fail to "conform, or confine itself to matters within the scope of the Board's jurisdiction." (ECF No. 47 at 8). Plaintiff disagrees, claiming that the PLB "completely ignor[ed]" what Plaintiff considers the plain language of the CBA, thereby exceeding the scope of its jurisdiction. (ECF No. 51 at 3). Plaintiff refers specifically to Rule 19, Section 1, which states:

> If the final decision is that the charges against the employee were not sustained, the record shall be cleared of the charge. If held out of service (suspended or dismissed), the employee shall be reinstated with all rights unimpaired and compensated for all time lost, less the amount earned while out of service.

(ECF No. 1 at ¶ 64). Plaintiff claims that this CBA provision is clear, and that since charges against him were not sustained, he **must** be reinstated and compensated for all time lost. (ECF No. 51 at 3 (emphasis in original)). However, his analysis is wrong. Numerous courts, including the Tenth Circuit, have upheld arbitration awards granting reinstatement without back pay, even in the face of similar CBA language and even where the Plaintiff is not at fault. *See Robinson v. Union Pacific*, 245 F.3d 1188, 1194 (10th Cir. 2001) ("in the absence of language evidencing a clear intent to deny the arbitrator any latitude of judgment,' the arbitrator is the proper one to address the question of 'whether reinstatement with full pay represents the sole remedy for an employee who has suffered an injustice, or whether it merely marks the outer limits within which an arbitrator may fashion a remedy appropriate to the circumstances.'") (internal citations omitted). Also, in *Airline Pilots Assoc., Int'l v. Eastern Airlines, Inc.*, an Adjustment Board reinstated a pilot who was fired for failing to meet flight proficiency standards. 632 F.2d 1321, 1322 (5th Cir. 1980). The Board did not find the pilot at fault, but awarded no lost pay or seniority rights. The district court vacated in part the Board's award and remanded in part. The United States Court of Appeals for the Fifth Circuit held that the district court did not have the authority to evaluate the Board's decision on the merits or to remand to the Board due to ambiguity. *Id.* at 1323. Where "the Board fashioned a remedy which it considered appropriate: reinstatement without full benefits," there could "be no doubt that the Board acted within the ambit of its authority." *Id.* at 1324. Thus, here, nothing compelled the PLB to award Plaintiff backpay.

Furthermore, this Court cannot say that Plaintiff did nothing wrong. As Judge Shaffer established and Defendant's briefs have continually observed, Plaintiff's PLB hearing's outcome

was *not* that the charges against him were not sustained and that he was absolved of any wrongdoing. Rather, the PLB found that "sufficient probative evidence was not included in the report to support [Gocha's] dismissal from service." (ECF No. 1-1 at 3). This is hardly a determination that Plaintiff did nothing wrong, especially where Plaintiff, as LSA, was responsible for submitted paperwork regardless of whether he personally altered the same. In apparent recognition of this, the PLB "sustained in part and denied in part Mr. Gocha's [reinstatement claim]." *Id.* Thus, the PLB's decision to sustain and deny Plaintiff's claim can be reasonably read as a determination that he was at least partially culpable for the events of May 2009, and that *some* sanction—such as reinstatement with no backpay—was appropriate.

Given this determination, the PLB had authority to exercise its discretion in formulating a remedy, and the award [reinstating Gocha without back pay] drew its essence from the collective bargaining agreement. *See* 45 U.S.C. 153 First (q). Consequently, the PLB's award does not fail to conform, or confine itself, to matters within the scope of the board's jurisdiction. 45 U.S.C. § 153 First (q); *see also W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 764 (1983) ("The scope of the PLB's jurisdiction comes from the "essence of the collective bargaining agreement."). And since the scope of judicial review of a labor board's decision "is among the narrowest known to the law," *Robinson* at 1192, courts do not review labor arbitration awards for ordinary error and cannot vacate an arbitral award just because a different judge might have reached a different result. *See Loveless v. Eastern Airlines*, 681 F.2d 1272, 1276 (11th Cir. 1982). This Court will not disturb a reasonable labor board determination drawing its essence from the collective bargaining agreement. The objection is overruled.

**B.     The PLB did not fail to comply with the CBA's time limits.**

In his complaint, Plaintiff alleges that that the PLB lacked jurisdiction to adjudicate the merits of his case because he was not notified of the disciplinary charge against him within the time frame that the CBA mandates. (ECF No. 1 at 12). Defendant moved to dismiss this claim (ECF No. 12), and Judge Shaffer agreed with the Motion in his Recommendation, noting that the record shows that the PLB considered Plaintiff's timeliness argument during the arbitration proceedings. (ECF No. 47). Judge Shaffer determined that the PLB reasonably construed the CBA when making its ruling on timeliness, and that "the court cannot conclude that the PLB exceeded its jurisdiction with respect to the time limits." (*Id.* at 10).

Plaintiff now objects to this determination. He continues to allege that the PLB exceeded the scope of its jurisdiction by failing to comply with the CBA's time limit for Amtrak's commencing disciplinary action, claiming that this time limit was "expressly established in the CBA." (ECF No. 51 at 6). However, the CBA time frame is not the model of clarity that Plaintiff asserts. The provision at issue, CBA Rule 19(b), states in relevant part:

> A letter of intent to impose discipline shall not be issued to an employee for an offense of which the corporation has had actual knowledge thirty (30) calendar days or more…

(ECF No. 1-2, (citing CBA Rule 19(b))). It is important to note that the provision does not specify *which* Amtrak employees' knowledge will be imputed to the company for purposes of determining when "the corporation" has actual knowledge. Plaintiff contends that Amtrak had "actual knowledge" once Ms. Stewart turned her report into the company on May 15, 2009. (ECF No. 1 at 12 ¶ 76). However, as Amtrak's response to Plaintiff's objection contends, one can plausibly interpret this provision to mean that someone with the authority to institute

disciplinary proceedings within Amtrak must have knowledge of the offense. (ECF No. 54). Lynn Berberian, the person with such authority at Amtrak, did not receive Ms. Stewart's report until March 4, 2010. (ECF No. 12-1 at 9). Thus, Amtrak's is not a baseless interpretation of CBA Rule 19, as the CBA does not define "actual knowledge."

Furthermore, just as Judge Shaffer observed, the record does indicate that the PLB considered Plaintiff's timeliness issue. (ECF No. 1-1 at 2 (The PLB award says that the record "reveals a number of issues that bear consideration. The organization argues that the charges were not submitted in a timely manner")). Unfortunately for Plaintiff, the perfunctory language the Board used in considering his timeliness claim suffices. Arbitrators are "not required to provide an explanation for their decision[s]." *Enterprise Wheel & Car*, 363 U.S. at 598. So long as the PLB considered Plaintiff's timeliness argument (which it did), and its judgment is consistent with the CBA (which it was), the Board's determination is not reviewable. *K.C. v. Bhd. of Locomotive Engineers*, 419 F. Supp. 2d 1038, 1044 (C.D. Ill. 2006) ("[P]laintiff may disagree that the evidence underlying the Board's decision is adequate, [but] the sufficiency of the evidence comprising the foundation of the Board's decision is not reviewable. The Board's determination is conclusive."). Plaintiff's objection fails.

    **C.**    **The PLB was not obligated to make findings of fact.**

Plaintiff contends that the PLB "was obligated" to make findings of fact pursuant to 45 U.S.C. § 153(k) and that it failed to do so. (ECF No. 51 at 6). However, the PLB is not obligated to make such findings. The pertinent statute states:

> Any division of the Adjustment Board shall have authority to empower two or more of its members to conduct hearings and make findings upon disputes, when properly submitted, at any place designated by the division: Provided, however,

> that except as provided in paragraph (h) of this section, final awards as to any such dispute must be made by the entire division as hereinafter provided.

45 U.S.C. § 153(k). As even a quick reading makes clear, the statute says that a division of the Adjustment Board, such as the PLB, "shall have the authority…to…make findings upon disputes," not that it is *required to* make these findings. 45 U.S.C. § 153(k). Plaintiff misreads the statute, and cites no additional basis for this claim. Moreover, despite Plaintiff's dissatisfaction with the breadth or scope of the findings, the PLB decision did purport to contain "findings." (ECF No. 1-1). Plaintiff's objection fails.

### D.     Untimely arguments are considered waived.

Plaintiff now also alleges that by converting his termination from Amtrak to a suspension with no deferral period, the PLB violated the CBA. (ECF No. 51 at 8). This is a new contention, raised for the first time after briefing in this matter had concluded, and not briefed at any other earlier point. (*Id.*). For this reason, this Court will not consider this claim. The Tenth Circuit has treated arguments raised for the first time in objections to a magistrate judge's recommendation as waived. *See Mobley v. Donahoe*, 498 Fed. App'x 793, 798 n.4 (10th Cir. 2012) (an argument "not raised below until…objections to the magistrate judge's recommendation" is deemed "waived"). And to the extent that Plaintiff contends that the issue was raised during oral argument before the magistrate judge, the result is no different. *See Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1235 n.8 (10th Cir. 2009) ("An argument made for the first time at oral argument…will not be considered."); *see also Fed Ins. Co. v. Tri State Ins. Co.*, 157 F.3d 800, 805 (10th Cir. 1998) ("Issues raised for the first time at oral argument are considered waived.").

**IV.     CONCLUSION**

Based on the foregoing, it is ORDERED that Plaintiff's objections are OVERRULED and that the Recommendation (ECF No. 47) on Defendant's Motion to Dismiss Counts I and II (ECF No. 12) and on Plaintiff's Motion for Judgment on the Pleadings is ADOPTED.

FURTHER, given this Court's earlier dismissal of Claim III, this entire matter is now dismissed and Defendant is awarded costs.  Defendant shall have 14 days from the date of this Order to file a bill of costs which shall be taxed by the Clerk of the Court.

DATED this 12th day of December, 2014.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge